The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting, God save the United States, in his Honorable Court. All right, be seated, please. All right, this morning we're going to start with the first case, Alig v. Rocket Mortgage, and Mr. Jay will hear from you when you're ready. Good morning, Your Honors. William Jay for the appellants. This case was sent back to the district court to apply transunion to the facts of this case, and the district court reinstated its judgment in its entirety, and so this court has allowed us to reinstate our arguments in their entirety in our attack on that judgment. The district court erred by granting summary judgment to the plaintiffs on both the unconscionable inducement claim and the contract claim, and it erred in certifying the class. I think our fundamental submission is that by following this common business practice, the defendants did not cause any injury to anyone in the class. So I'd like to start with, if I may, the district court's conclusion on transunion and explain why there's no evidence that could support certainly a class-wide judgment on the injury question. So the district court had basically one sentence of reasoning about why transunion does not control here, said that all of the plaintiffs paid for an appraisal, a fair, accurate, and unbiased appraisal that they never received. But while we don't agree with everything in the court's prior panel opinion, one thing that the court said we certainly do agree with, and that is that there is no evidence that the defendants breached any obligation to provide a fair, unbiased, and impartial appraisal. Let's go beyond that. Let's assume that we're reviewing the district court's opinion in the light of transunion. And as I understand it, the district court assumed that the class members paid an average of $350 for an appraisal. And so we'll take that. There's nothing to suggest that that isn't a fair or accurate conclusion. The second statement that it would have to make under transunion is that they, in fact, didn't receive a $350 appraisal or an appraisal at all. I think the district court's theory is it didn't receive any. The appraisals were of no value. And I gather the court didn't explain how it could reach that conclusion for class members. And I gather your argument is there's no evidence that any of the class members even ordered an appraisal for themselves or saw an appraisal or that the appraiser saw it or relied on it or that it wasn't accurate. That's your position, isn't it? That's basically our position. That's right. And transunion, you say, requires a finding with respect to each class member of actual damage, not the statutory damage. Right. Statutory damages, as in transunion, are not enough. There has to be injury. And in a case where the claim is we paid money for something, the injury has to be that you didn't get what you paid for. Well, you know, they paid for an independent appraisal, and they didn't get it. The massive issues between Quicken Loans and the appraisers, there's a whole lot of activity and influence on that, quote, independent appraiser. That's their claim for damages, isn't it? So can I respond to that with three steps? So the first is just to point out what this court's prior decision on the breach of contract claim said, that the plaintiffs had not yet proved that there was a breach of any obligation to provide a fair and impartial appraisal. Isn't that an evidentiary issue to be decided? Well, recall, Your Honor, the district court granted summary judgment for plaintiffs and found no factual dispute. There's no class-wide evidence that could sustain that. And I think that's what this court recognized in its prior analysis of the contract claim. But more fundamentally, and this, I think, gets to Judge Neumeier's question as well, that if the theory is we paid for something that we did not get, they all received an appraisal. They all received an appraisal that was fully compliant with the applicable professional standards. And so if the argument is that they bargained for or even expected something over and above what the professional standards allowed, they would need to have evidence of that expectation. And they have none. This court, in its prior panel decision, all it could say was that it supposed, it is reasonable to suppose that there might be such an expectation. But TransUnion says that supposition is not enough. Inference is not enough, especially once you have a class-wide judgment awarding damages. You have to have evidence of standing, and that means evidence of injury. And in this case, that would mean not getting what you paid for. So to your question, Judge Floyd, the district court completely skipped over that point and granted summary judgment for the plaintiffs without ever analyzing it. Recall that the first time around, the district court didn't, thought that the standing of unnamed class members was totally irrelevant and didn't examine it. That, I take it, is why this court sent the case back. Well, of course, the Supreme Court sent it to us.  And we sent it back to the district court to do the analysis under TransUnion. And the district court concluded that its prior opinion did what was necessary. Right. And to Judge Floyd's question about the sort of the, I think the word you used, Your Honor, was machinations, so recall that there would have to be class-wide evidence. Right. And so what we showed in our briefs both before and I think in more detail on this appeal after remand is that there were any number of instances in which the appraiser himself or herself didn't even see the borrower's estimate, in which the value wasn't based on the appraisal work done by the appraiser but by a recent sale price, or that the homeowner, him or herself, told the appraiser what they thought the value was worth. I guess the problem I'm having, isn't what the plaintiffs are going after is the conduct about the way the appraisal was done, not down the road, you know, where there's a foreclosure and you find out you're underwater. They're not going there. They're going in the first step. Well, the claim is for unconscionable inducement, right, so that our position, right, is that whatever they claim is unconscionable has to have caused them to enter into the loan. And as the court recognized, there is no evidence, the record is devoid of evidence, that anyone's appraisals were inaccurate, any of the unnamed class members' appraisals were inaccurate, and that any of the unnamed class members relied on the appraisal figure in deciding whether or not to enter into their refinance loan. And, in fact, we've shown in our briefs that there are any number of examples of borrowers who borrowed as little as 8% of the appraised value of their home, and the exact details of the appraiser's valuation of the home likely were not material to any such borrower. Now, if our friends on the other side first tried to come up with a theory for why they were standing, one of the arguments they made was that the deprivation of information was itself an injury. And the Supreme Court, I think, has ruled that out in TransUnion by saying informational injury requires downstream consequences. You've got to show that you were harmed by not getting the information. And so that leaves them with the theory that they paid for something over and above a fully compliant with professional standards appraisal. They don't have any evidence, much less class-wide evidence, that they bargained for, expected, contracted for, or paid for that. Even in the prior panel decision, the court was willing to infer that there was a promise to provide a fair and impartial appraisal, but it held that the plaintiffs had not established any breach of that yet. That's why the prior panel decision remanded on the contract claim. We submit that the dearth of evidence on that point grounds for summary judgment in our favor. It certainly can't sustain summary judgment in the plaintiff's favor or certification of an entire class of borrowers. I'm not sure. We'd have to think this through, but if we limit our consideration to the TransUnion issue, it just goes to the class certification. In other words, if we were to, hypothetically, if we were to, say, decertify the class because TransUnion wasn't fulfilled, then the plaintiffs would still have their claims in accordance with our prior opinion. Right. Named plaintiffs can certainly, individual plaintiffs could certainly try to establish on an individual basis that they were harmed. And I know that the AILGS went and got a retrospective appraisal of their home, and they say that that's the basis of their harm. Now, we're not receding from our- Also, under our prior opinion, we left open contract issues for the court to resolve. And, of course, if that were to apply, we would have to, if we were to do all that, if you were successful, it seems to me, you would get decertification, but you'd have to remand it to have it considered for the plaintiffs and to have the contract issues resolved. Well, we're not- Because our prior opinion left the contract issues open, right? It did. So if you reinstated that opinion, then that's what would happen. The district court can't overrule our former opinion. Indeed not. But we're not receding from our argument that we should have gotten summary judgment on both claims. But you're right, Judge Niemeyer, that if the court reinstated that decision, that's what would happen. And on the contract claim in particular, there is one point that I want to emphasize about the prior opinion, which is that the court suggested that it would just be a ministerial exercise to determine damages. It would not be a ministerial exercise to determine- You could argue that to the district court. Indeed. Because our prior opinion, while it's been vacated, was left open, the contract issue. And I suppose because it was vacated, the district court would have to start over in some sense. But it seems to me what the Supreme Court directed us to do is to review our former opinion in light of TransUnion. That's right. But right now there is no decision of this court on all of the challenges that we've raised to summary judgment on both the statutory and the contract claims. So I think this court either would need to reinstate its decision or make a different decision on those claims. And the point that I was just making is to argue that if you were to reinstate your opinion on the contract claim, I think it's important to not go wrong on the point that figuring out whether an individual borrower was damaged by the supposed promise to provide a fair and impartial appraisal, that's not just a ministerial exercise. Because the court seemed to assume that you could figure out what the true value of the class member's home was in 2004 to 2009 without a retrospective appraisal. And I think just as we were discussing a moment ago, the ALEGS went and got a retrospective appraisal, but the other class members did not. That's the fundamental problem with the treatment of this case as a class case. And so if the court were to reverse the class certification, then just as you said, Judge Niemeyer, it would be up to the class members to decide whether they wanted to certify another class, depending on common evidence to establish standing and the other elements, or whether they wanted to proceed as individuals instead. Is there any relevance to this court's decision of a couple of weeks ago in Fernandez and Rentgrub versus Rentgrub? So I'm familiar with that decision. I think what our friends on the other side would say is that that's more like transunion than this one. I think that it is a helpful elucidation of the need for standing in a statutory damages case. I think that Baer versus Craig Northrup team, the case we've cited in our papers, I think is closer to this case than the recent decision is, because there and here you have a claim of a procedural violation, and the obligation is on the plaintiffs to establish that a procedural violation caused some harm. The same is true in the decision that you mentioned, Your Honor. But the reason that I think Baer is even more on point is that in Baer, they're paying for services, and the plaintiffs were claiming that they didn't get the services that they were promised, and this court held that you can't repackage your sort of naked claim of a procedural violation as a failure to provide what was expected just by claiming without evidence that you expected something else. And I think the same is true here, that there's no evidence that they expected an appraisal that any of the borrowers expected, an appraisal that did anything other than comply with the uniform standards. And all of these appraisals complied with the uniform standards. Our friends on the other side, they don't agree with the uniform standards. They think that was insufficiently protective of borrowers, but what they haven't shown is any expectation that borrowers had that they were getting something beyond a fully compliant appraisal. Is that it? I think that's all at this time. Thank you, Your Honor. Thank you, Mr. Jay. Mr. Gupta? Good morning, Your Honors. Thank you, and may it please the Court, Deepak Gupta for the plaintiffs. As this case comes to the Court, Judge Niemeyer, I think you're right. The question before this panel is whether the panel's earlier decision is consistent with the Supreme Court's recent decision in TransUnion. The answer is that it is, and I think this appeal turns on a simple proposition, which is that when someone pays money to someone else and claims that they did not get what they paid for or that the law did not This part was the one I posed the question to your colleague. I think there's evidence that class members paid an average of $350 for appraisals. Correct, Your Honor. But the second part is that they didn't get what they bargained for or what was anticipated. It seems to me there's no evidence in the record of that. As a matter of fact, there's all kinds of indications to the contrary, that we don't even know whether class members provided their own estimates of things. We don't know if class members were dissatisfied or whether the actual appraisals were inaccurate. In other words, there's no evidence to suggest they weren't dead on. What we have is no further analysis of the class members' standing injury. We have the fact that as part of their closing costs, they paid for an appraisal, which was required by the lender. But the lenders, I suppose, were fully satisfied and the class members got their loans. And so the question is whether in that whole process, whether the class members were injured. And while we have a fair amount of evidence with respect to the name plaintiffs, the two name plaintiffs, the Shays and the Elegs, I don't think the district court went beyond just relying on the 350 per person and the assumption that the class members didn't get an appraisal, period. That's what the court said, right? So I think there's a lot packed into that question, Judge Neumeier. Well, it started with what the district court concluded on the transunion. Yes. I mean, I think what the district court was saying is essentially what this panel, what the prior panel opinion said, which is that each and every one of these class members paid this money and what they paid for is an independent appraisal and they didn't get that. And I think it would be – That's the question. You say they didn't get that, but the evidence doesn't show they didn't. Well, the evidence doesn't. I think it's the same evidence that the prior panel opinion relied on. So at Joint Appendix 919, there's a spreadsheet that was produced by Quicken Loans that shows that it included the estimated value on every appraisal order regarding loans refinanced in West Virginia during the relevant period for all of the class members. That's what the prior panel opinion relied on. And I think a hypothetical might help because what we're asking is, would this be the kind of suit that would have been cognizable in Anglo-American courts at the time of the Constitution's framing? And this is no different from a case where if I have a business and I hire someone to do an audit of my business, they claim to be the person with all the requisite credentials. They claim to be, let's say, a certified public auditor. They claim to be providing me with the proper independent report, but they're a charlatan. They're not actually a certified public auditor. There are arguments in this file from appraisers that said they didn't even look at those estimates. So that is one type of class group. We have others who say it didn't influence them. And others say we certified and we did our own work. We didn't pay attention to it. So, Judge Newman, there would be no answer in my hypothetical lawsuit to say, oh, well, the report you got is the same report that you would have gotten and you can't show downstream effects. The point is I paid for an independent report. I paid for one that would be reliable. It wasn't. An independent report is a nomenclature for a report that was uninfluenced by the homeowner's estimate. Independent from the homeowner's estimate. Now, we do not know that the class member's appraisals were independent or not. No, we do. The only evidence is that they were independent. This is what the panel held last time around. What it held was that Quicken Loans was the court didn't think so. Well, no, I don't think that's right. I think we should be cautious about reading too much into a GVR order. A GVR order can be acted upon at the recommendation of a single law clerk. It doesn't mean that the court was saying you got this wrong. It means we issued this decision. My friends on the other side said to the Supreme Court that our theory of standing was a risk of future harm theory of standing. And so the Supreme Court sent it back. But, in fact, our theory has never been a risk of future harm standing. Our theory of standing is the most elemental, fundamental kind of theory of standing that exists in the law. The question is of the evidence, the record, evidence. Right, and the record. And the Supreme Court made very clear that the evidence has to be introduced with respect to absent, I mean, to the class members. Right, and the evidence is the same for every class member with respect to standing. The evidence is that for every single class member, they paid. Well, that's simply cannot be true. What if the appraiser never saw, never received the homeowner's appraisal? Right. It's independent. He makes it independent. So in that particular case where he never saw it and, therefore, could not even have relied on it, your theory doesn't hold. No, I don't think that's right, Judge Neumeier. That's never been our theory. Our theory has never turned on what happened downstream. Once the process – The actual damage to the plaintiff. Right. The harm to the plaintiff is the monetary harm of paying out the money for the thing that they didn't get. But in what sense did they not get an independent appraisal if the appraiser didn't even look at the homeowner's estimation? So I had that question, too. The theory of how that was not an independent appraisal as paid for. So if you look in the prior panel opinion, there's the testimony of Dewey Gouda, who is one of the appraisers. He had a deposition. And what he said is that regardless of whether he looked at these values, that Quicken had a whole team at the company that if there was a discrepancy between what he estimated and what they thought should be the value, they would call them up and they would pressure them. And this was a real focus of the prior panel opinion, that the whole process was corrupted by this high-pressure tactic of pressuring the appraisals to come in at the values that they wanted. So it's not about whether any one particular person, you know, was rendered underwater as a result. I mean, that's why the legislature cares about this. That's why the policy, this practice became universally condemned. But if you're asking the standing question, it's not about what are the potential downstream effects. Just like in my hypothetical case, it's not about, I mean, you could imagine lots of things that would befall my business if I don't get the kind of audit that I paid for. But the more simple theory, and this has been true at Anglo-American law going back centuries, is that when my claim is that I paid you for something and I didn't get the thing that I paid for, and this isn't some marginal attribute of the thing, right? The cases that they cite, most of the cases in their brief involve very, very marginal attributes of something that somebody paid for. This is independence was essential, the essential attribute of the appraisal. In effect, what I think the prior panel opinion was holding is that when you charge someone for an independent appraisal, but it is not in fact independent because the values are sent there to the appraiser because they have this whole high-pressure unit that's designed to taint the process, that you haven't gotten the thing you paid for. It is as simple as that, and that's why the prior panel opinion said that it was obvious that there was standing here. It's pocketbook injury. Go ahead. So that theory that you just argued that somebody who looked at it and got pressure, that theory applies to every potential class member? Yes. Because every one of them got influenced by Rocket Mortgage? Every one of them was pressured to render something other than their professional opinion? No, everyone paid money for a reliable, fair, independent appraisal. Right, but you just said the reason they weren't is because Rocket Mortgage put pressure on them if Rocket Mortgage didn't get the appraisal it wanted. Do we know that for every class member? No, and I don't think we need to know that for Article III standing, just as we wouldn't need in my hypothetical. Or, for example, let's say I hired a lawyer to advise me on a case. My business is in hot litigation against another business that produces the same product, and what I really want is independent advice from a lawyer. And unbeknownst to me, that lawyer's law firm actually represents my adversary, and in his defense, when I sue him and I say, hey, you shouldn't have done this, you shouldn't have taken my money, I wanted an independent opinion that I could take to my board of directors, if he says, well, I didn't go down the hall and look at the files for Company B, that's not a defense. The point is I paid for the independent appraisal. And that was the simple and basic theory. That's why you keep, I know that's a theory, but you're not focusing on the question, and the question is they paid for an independent appraisal. That's your theory. The question is, was every class member denied an independent? And the evidence on that could be various things. Number one, the appraiser was independent because he never saw the homeowner's influence. Number two, he was never pressured by rocket mortgage. Number three, it was indeed accurate. And so we have to have, and the Supreme Court said pretty clearly, every member of the class, every member of the class has to satisfy Article III damages.  And I think it's important when you're thinking about Article III standing to remember one fundamental precept that the Supreme Court has said, and it's in the Fourth Circuit's opinions, which is that you don't conflate standing and the merits. Let me say this. Is the following statement true or not? The previous panel recognized the record does not include evidence that every appraisal was inflated. It's stated previously. However, there's evidence that every appraisal order was tainted with the BEV values and the defendants concealed that process from the plaintiffs. That is exactly right, Judge Floyd. Is that your case? That is exactly right, yes. That is exactly right. And the theory of standing, I think, once you recognize that, follows logically. Where do I find that evidence? So the evidence that Judge Floyd just talked about? I mean, he's describing, I think, accurately the prior panel opinion. He's basically describing the claim that everybody didn't get what he was tainted. But where's the evidence that class members were received, did not receive an independent fact as a new class member? I think it's precisely what Judge Floyd described, and I'm happy to go through that evidence again. But what I want to do, though, Judge Niemeyer, is make clear.  Could you accommodate me, please? Sure. Tell me where I find the evidence about absent class members not getting an independent appraisal. There is none because that's not true. I mean, every single class member failed to receive an independent appraisal in the same way. And for the reasons that Judge Floyd said. If the appraiser didn't see the homeowner's estimate, then it's independent. And if A-League didn't, I mean, if Rocket Mortgage didn't pressure them, it was independent. No, that's not at all what I'm saying. I don't want to be misunderstood. Then tell me why, if the appraiser did his appraiser without influence from the homeowner and without influence from Rocket Mortgage, isn't that independent? I think, Judge Niemeyer, what you're doing is conflating. My question is, is that independent? No. Why not? Because what West Virginia law made the judgment and what this court found. Factually, why isn't, if an appraiser gives an appraisal and did not see the homeowner's estimate and was not pressured by Rocket Mortgage. Right. And he gives an appraisal, why isn't that appraisal independent? So think about the hypothetical I gave you about the law firm. It would be the same thing, right? You wouldn't say— Can you stick with what my question— I'm trying to. I'm trying to because I think there's a premise baked into a lot of your questions, which is that the downstream harms have to have manifested in a particular way. What we're saying is that they didn't receive the thing that they were supposed to receive because essentially the product was a kind of process, right? It was an independent process. It's characterized by its independence. It's the whole reason you have appraisals. If you didn't want independence, you would just have the lender say, hey, we think the value is X, and then that would be rubber stamped. The whole point is that there's an independent appraisal. The same thing for the advice of lawyers. The whole point is that lawyers have a duty to their clients and they're not supposed to be working for the other side. And it's no defense to say, well, I didn't look at those files. And the same thing with the certified public accountant hypothetical. So I think that your questions, Judge Niemeyer, are really about the merits of the underlying claim, and I think it's important. The question is I'm looking for evidence that every absent class member was damaged by paying $350 for an appraisal. Right. And the damage is that the absent class member didn't get an independent appraisal. Correct. And my question is, hypothetically, if the homeowner's estimate, which you're challenging, and the pressure from rocket mortgage did not occur with respect to an absent class member, that class member got an independent appraisal, and we don't know in this record whether that's so or not. I think, Judge Niemeyer, your questions rehash the debate between your dissenting opinion and the majority opinion on the merits of the underlying claim. But it is important to keep standing separate. The ALIGs, there's evidence, quite a bit of evidence about the ALIGs and the Shays, what happened, whether there's a telephone call, whether they saw the reappraisals. There's evidence in that. Right. Now, I did disagree with the notion, I thought, that the appraisers for the benefit of the lender, and the lender made the loan, and the loan was taken out, that borrowers were happy, they paid back the loan, and it served, they just weren't injured. Right. That was my theory. But setting that aside, I mean, your theory is that they paid for an appraisal and didn't get the independent appraisal. Exactly. And my question, just a minute, and my point now under transunion is that we do not have evidence that every class member got an influenced appraisal. Yes, we do. We know that every class member paid for the appraisal. We know that with respect to every single class member, the amount was sent to the appraisers. We know that Quicken had a standard practice across the board of pressuring appraisals when the appraisals were not what Quicken wanted them to be, and that is not a fair or reliable appraisal. It's not something, what they paid for is a fair or reliable appraisal that they could take to somebody else and say, hey, there's a fair appraisal. You can't do that. You just don't have the evidence of what you just said is true. I absolutely do. Every time, every time Rocket Mortgage pressured the appraiser, every time the borrower's estimate affected the appraisal. No, I'm not, that's right, Judge Bell. You have to show that. No, no, I disagree. I think that when the point is that the appraisal was tainted and corrupted, the hallmark, the whole point of an appraisal is what you're buying is independence, and they didn't get that independent appraisal. It's not something that they could take to a bank or anyone else and say, hey, this is a truly independent appraisal, and that is the thing that they paid for. And Article III standing is not, you know, any more complex than asking at the time of the framing of the Constitution, if someone went into a common law court and they said, I have paid money, and now I'm alleging, and again, what they allege is the merits. I am alleging that they should not have charged me this because it was unlawful and because I did not receive the thing that I paid for. I didn't get the benefit of the bargain. I didn't get the product I paid for. That would be a claim that would easily have been cognizable, and TransUnion verifies that. TransUnion says that the most obvious form of standing is monetary harm, is pocketbook injury, and the only reason we're here, I think, is that my friends on the other side in their cert petition mischaracterized our theory of standing. Our theory of standing has never been about the downstream risks or what ends up happening in the process to any particular person. You're asserting that the Supreme Court didn't read our opinion. No, no. I think we should assume that the Supreme Court read the opinion. The Supreme Court granted the GBR. They read our opinion. I think we should assume that the Supreme Court read the opinion, but I also do not think that we should assume that the Supreme Court was concluding that there was something defective about the opinion. And, in fact, in most grant, vacate, and remand orders, I was addressing your notion that the petitioners misrepresented, so the Supreme Court relied on a misrepresentation. Oh, to be clear, I think the way that the cert petition worked, and you can see this in the beginning of their opening brief in this appeal, is to recharacterize what we are alleging is something much more complex, which is that it's a causal chain that turns on all sorts of things that end up happening. And I think most of your questions, Judge Niemeyer, have been about that. But that is not at all what we're saying. What we're saying is something much more simple, which is that it has always been true, and this is why they cannot really identify cases where this is not true, where when somebody pays money and claims that they didn't get the thing that they paid for, they at least have Article III standing to come into court. That secondary aspect is what we're focusing on. You keep assuming it, and you can't assume it without evidence. That is that they didn't get what they paid for.  And they didn't get the question, and you say what they claim they should have gotten is independent appraisal. Correct. And the question of independence depends on, under your theory, whether it was influenced by the homeowner's estimate or whether it was pressured by Rocket Morgan. The judgment, and this is the merits now, the judgment that West Virginia has made, and this Court made a correct, eerie prediction of what West Virginia law is, is that when you send these estimates to the appraisers, you have irredeemably tainted the process. It's an unreliable estimate that's now universally condemned and not permitted. What rejected that is damage. I mean, that is a very type of thing, and in Bayer we did, and in Spokane. These are all statutory types of structures and damages that have been prohibited. But beyond that, the plaintiffs have to show actual injury to themselves beyond the statutory violation. They absolutely do, and they absolutely have, and that is through the payment of money. Thank you. If they got an independent appraisal, did they have any concrete harm? If they had gotten, so counterfactually, imagine that they had gotten an appraisal where there was no Bayer estimated value, there was no pressure team that tainted the process, and everyone acknowledged this is a fair and independent appraisal of the type that should be provided, we wouldn't be here. Thank you. All right, Mr. Jay. Thank you, Your Honor. Just a few points in rebuttal. The first is just to highlight what my friend said in response to Judge Bell's question about the so-called pressure team. That's not class-wide evidence. They don't have evidence that every single appraiser was pressured, especially because many of the appraisals did come in below the borrower's estimated value, precisely because appraisers don't take those estimates seriously. And we've cited ample evidence, pages 16 to 17 of our brief, showing that that's not class-wide evidence and that many appraisals don't even rest on the appraisal work done at the time. They may rest on a recent sale price, for example. Second, Mr. Gupta has no answer to the question, how can the appraiser not be independent if the appraiser didn't see the number on the order form and the evidence in the record from an appraiser who did appraisals for class members, Mr. Judy, is that often he wouldn't see the order form before he did the appraisal. He'd be sent out on an assignment because the assignment would be written up on a whiteboard. So that's in the record and there's no answer to how an appraisal cannot be independent if the appraiser has not been influenced. Now, a further point is that applicable professional standards recognize that appraisers are knowledgeable professionals. They're signing a statement under penalty of perjury that they've not been influenced. But even if you set all that aside, many of them did not even see the appraiser. And there's no way of knowing the estimate. There's no way of knowing how many did or how many didn't, precisely because there's no class-wide evidence that's been put in on that point. And that, I think, disposes of our friend's argument that every single class member got a non-independent appraisal. Last point is just that our friends on the other side say that we don't have any cases in which there was a paid money for something and claimed that that's not what you got. That's exactly what this court considered in Bayer where the argument was, I wanted independently sourced settlement services and I got instead tainted services because of a kickback. And this court said, you have to show some concrete harm, not just a procedural violation. So the most that our friends on the other side have established that they are claiming is a procedural violation from sending the number to the appraisal company. They can't even establish that the number got to the appraiser. So this is just like TransUnion's example of the swerving motorist, where if the plaintiff drives home and was exposed to the risk of a swerving motorist but didn't get hit, that plaintiff is lucky but not damaged and doesn't have standing. And the same thing is true here. The most that Mr. Gupta can show with common evidence is that by sending the number to the appraisal company, there's a possibility that it might have been shown to the appraiser. But a possibility is not enough. And without class-wide evidence, they can't have a class certified on this Article III standing point. Unless the court has any further questions. Thank you, Mr. Jay. Thank you, Your Honors. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, Henry F. Floyd, Kenneth D. Bell